May it please the Court, George Hollister, Hollister Law Corporation, on behalf of the appellant, Bo'ell Rains. Your Honor, before you today is a consolidated appeal by Mr. Rains of a civil minute order entered February 20, 2003, and also of a subsequent nonconforming judgment entered May 21, 2003, by the Honorable Eastern District Bankruptcy Judge Christopher Kline. The minute order purports to grant a motion by the Chapter 7 trustee, the appellee, seeking to approve a settlement negotiated at a time when Mr. Rains was suffering from a brain aneurysm and a stroke. Rains has appealed from the minute order on the grounds that the Bankruptcy Court committed reversible error when it effectively ignored the testimony of his experts to the effect that Mr. Rains lacked the mental capacity to enter into any business affairs on the date of the mediation, which was the same date that he went in for surgery for the brain aneurysm. The judgment entered three months after the minute order on ex parte application was separately appealed on separate grounds that it contained extrajudicial declaratory and injunctive relief, which was never before requested by the trustee and which affected Mr. Rains' interest in an ERISA-qualified ABA, American Bar Association, retirement account. Counsel, what extrajudicial relief was in the order? Your Honor, the judgment purported to declare the retirement plan property of the estate under 11 U.S.C. Section 541, and also that it was subject to execution. And that's an important distinction because in order for there to be a finding of property of the estate, there needs to be an adversary proceeding. The trustees, presumably, of the pension plan would have to be named, and there was no such adversary complaint. There is not. Counsel, there was never any briefing and or argument regarding the extent to which the retirement plan was exempt? Your Honor, there was not. There was a originally at the commencement of the bankruptcy case, there was a disclosure of assets. Among the disclosure of assets was the retirement plan. However, under the Patterson v. Schumanni United States Supreme Court case, the ERISA-qualified pension plan, which has anti-alienation provisions which prevent the assets from being subject to execution. Was that when that retirement plan was listed, was it designated as exempt? It was, Your Honor. As a matter of fact, what it said was it was in the Schedule C. It was listed as exempt. However, in the description, there was an admonition that this is only, that it is not property of the estate that is simply being listed in an abundance of caution. In the bankruptcy courts, you don't want to be accused of hiding assets. And so the counsel was very straightforward. It wasn't me. It was another, his bankruptcy counsel was very clear that he does own the retirement account, but that the court does not have jurisdiction over it. Was there ever any challenge to the characterization of that retirement plan as being exempt? Your Honor, there was an objection to the exemption. In other words, there was an objection to Mr. Raines' entitlement to claim the property exempt. However, that's different from the question of whether it's property of the estate in the first place. If it's property of the estate, in other words, generally if it's ERISA-qualified, has to have an anti-alienation provision in it, the court does not have any jurisdiction whatsoever to directly or indirectly take jurisdiction over that particular asset. Was that characterization of the asset ever made to the bankruptcy court by a client? I'm sorry. Was the characterization that the court had no jurisdiction, was that argument ever presented to the court prior to the appeal? Your Honor, it was in the initial bankruptcy petition, which I believe was filed on the ‑‑ excuse me, the schedule of the Statement of Financial Affairs. It was actually ‑‑ there was actually language in the initial disclosures that this was property of the estate, it was not property of the estate, excuse me, and therefore was not subject to the jurisdiction of the bankruptcy court. And that has been the consistent argument all the way along through this case. Well, then if it's not property of the bankruptcy estate, wasn't there something in the settlement agreement that said the objection to it? Wasn't there an objection and then some kind of negotiation as to whether or not that objection would be withdrawn? Well, of course, Your Honor, recall that Mr. Raines doesn't recall anything about the mediation. He was ‑‑ there was a rupture of an aneurysm in his brain and he went directly to brain ‑‑ I understand that, but there are written ‑‑ there's a written memorialization of what happened. And what it says is that Mr. Raines shall pay $250,000 to the trustee. If he doesn't, then not only will he lose his discharge, but the trustee's objection to the claim of exemption would be sustained. And, Your Honor, I don't mean to ‑‑ I guess that's what's confusing me is because it's characterized as an exemption in the settlement agreement, but you said it was characterized as not even in the estate. That's correct, Your Honor. See, the trouble is, is that by being cautious and disclosing the asset and on the schedule, and then on the Schedule C disclosing it as exempt, it's something that bankruptcy lawyers do as a matter of precaution. You do not want to be accused of hiding assets. So what they did was they said, look, we have it, but it's not property of the estate. So it's here, but you can't judge. You don't have any jurisdiction over it. Now, the trustee then went and objected to the claim of exemption, which really doesn't matter because the claim of exemption was purely precautionary and superfluous. Well, it's not really a claim of exemption because exemption means it's in the bankruptcy estate, but it's exempt. So there kind of was a mix of characterizations. That's right, Your Honor, except that there was never been any admission that that property is subject to the jurisdiction of the court. As a matter of fact, the contrary was specifically and expressly indicated in the schedules. This is not the court doesn't have jurisdiction over it. And this is a common practice in bankruptcy practitioners. That's all I do. And we are very careful to be very straight. We come in with our hands up when you represent a debtor because you do not want to risk the discharge by being accused of concealing assets. Let me ask you a question, please. I'm a little confused on the impact of ERISA. These parties went to mediation. In mediation, it doesn't matter what the law is. What you're trying to do is arrive at a settlement that both parties will walk away from. So they arrived at a settlement, $250,000. What – what – I don't understand why ERISA even matters if they've entered into an agreement that this ends the dispute. Well, they don't, Your Honor. They – to the extent there was an agreement, to the extent Mr. Raines had the mental capacity to enter into an agreement. You keep going back to that, but that's a different issue based upon findings of fact. Just stay with us on this issue. Your Honor, there was no agreement beyond allowing the trustee to prevail on his objection to the claim of exemption. Recall, the claim of exemption doesn't have to be made if it's not property of the estate. The court has no jurisdiction over that asset. And so it's – it's a – it's a red herring. It's a – you know, the – the trustee apparently wanted the exemption objection to be sustained, but it's meaningless unless – unless the asset to which the exemption has been claimed is property of the estate. And there's never been any concession. But your claim is that under ERISA that Mr. Raines doesn't own some portion of – of this – of this account. Is that correct? Your Honor, it's – it's a little different than that. Under ERISA, in order to qualify as ERISA, it has to have anti-alienation provisions, which prevent the assets, whether they're distributed or otherwise, prevents them from being subject to execution. And so while Mr. Raines has an entitlement to the retirement plan, the definition of property of the estate excludes property which the trustee or the creditors cannot access. Clear from the record that this account is ERISA qualified? Your Honor, it is. We've attached a copy of the ERISA plan. It has the anti-alienation provisions. It's an American Bar Association plan. It's been in effect for 30 years, as to Mr. Raines. It's never been challenged, I believe. Is there more than one participant in the plan? There is, Your Honor. This is a – Is that shown in the record? Your Honor, it's a – it's an American Bar Association retirement account. I'm – I'm sure the American Bar Association is a glorious organization. My question is simple. If there's just one participant in the plan, it's not qualified. And you can get all the American Bar Association trappings you want. Does the record show there was more than one participant? Your Honor, I would have to look at the plan. I do not – I do not know that that was specifically addressed. Well, Your Honor, the question of whether the ABA plan is property of the estate or not has not been litigated. It has not been properly brought before any court. Well, maybe it shouldn't be. Maybe because of this agreement, the whole ERISA question is out because parties have come together on how they're going to settle the matter, and the issue is not before us. But, Your Honor, the agreement says nothing about whether it's property of the estate, and there was no intention to the extent that you can – But you have to. There – he's – Raines has agreed to pay money, $250,000, and I'll walk away. Why isn't that sufficient? I mean, it doesn't have to have all the – all the additional trappings, does it? Well, it doesn't because it's – Well, because, Your Honor, it's one thing to agree to pay money, and it's another to – it's another question as to how to enforce it, and there was never any agreement that it would be enforced against this particular asset. Well, what was – what was the purpose of saying if he doesn't pay, then the objection to the exemption would be reactivated? What was the purpose of that?  Well, I don't know that Trustee felt that it would have some – it would give him some leverage somehow to – to collect on his judgment, but I don't know that there was ever a meeting of minds in that regard. As a matter of fact, I'm not sure that there was a meeting of minds at all with respect to this agreement in light of Mr. Raines' mental capacity at the time. You keep going back to an issue. It really defects your argument. I'm sorry, Your Honor. It's – it's important. We understand your argument, and there was a finding of fact on that. And if you could just stay with ours instead of going back would really help us. We understand your argument. Thank you, Your Honor. I just don't want to be perceived as waiving that. And there is a question as to – there is that question, but I understand Your Honor does not want to address that. The – there is – the Trustee may attempt to divert attention to the question of whether the minute order was final for purposes of the appeal. I believe this is a red herring. The district court accepted jurisdiction over the appeal of the minute order versus the judgment over the Trustee's objection and properly concluded the minute order was a final order. It was only when presented with the fully brief separate appeal of the judgment that the district court sua sponte and retroactively reversed its earlier finding of finality. This was done notwithstanding that the question of finality of the minute order was then on appeal to the Court of Appeals, and notwithstanding the district court's express acknowledgment that the judgment – The district court went on to dismiss the appeal of the judgment on the grounds that the judgment was already on appeal by operation of Bankruptcy Rule 8002A, offered no guidance as to how he might challenge the judgment on separate jurisdictional grounds, presented the second appeal, or in what form. Mr. Raines appealed the second district court ruling to this Court and filed a motion to consolidate and join the two appeals. That motion was granted and the issues germane to the judgment have now been fully briefed and are presented today. Your Honors, the bottom line is that the issues raised in the two appeals are completely different. I believe that they're both final orders for purposes of appeal, but it shouldn't matter at this point, seeing as how there's been a consolidation and joinder, and that the defenses to the judgment are now before Your Honors. Counsel, let me go back to your representation that the retirement plan was expressly denoted as being not property of the estate. You say that's in Schedule C? Your Honor, it is in – it may also be in Schedule B. One moment, please. Oh, I see. It's in Schedule B. Okay. All right. Thank you. Your Honor, turning towards the substantive issues, it's our position that the Court has overstepped its discretion and committed reversible error. In the context of the minute order that Raines was mentally competent to enter into an agreement or that the agreement is enforceable, the preponderance of admissible evidence clearly demonstrates that regardless of how he may have appeared physically, Raines was, due to the aneurysm and the words of his treating physician, without the mental capacity to engage in business affairs on the date of his admission and a number of days on each side of that date, which is the same date as the mediation. Your Honors, our position that because Raines' experts were in a uniquely qualified position to evaluate the actual impact of the aneurysm upon Mr. Raines' actual mental capacity at any time during that episode, that the decision by the Bankruptcy Court to disregard or discount the expert testimony in favor of lay-precipient testimony by parties who are necessarily biased by pecuniary interest in these proceedings and without even so much as an evidentiary hearing or opportunity to impeach or test those precipient witnesses constitutes clear and material abuse of discretion and reversible error. Counsel, isn't that what district courts do all the time? They take in all of the evidence and they weigh it and determine which evidence in the court's view is entitled to more weight? Clearly, they do, Your Honor. Our position, though, is that when you present it with expert testimony versus precipient lay witness testimony by people who have a pecuniary interest and are not experts, as opposed to the experts that were presented by Mr. Raines, who actually literally looked inside of his head and are experts at treating aneurysms and evaluating them, that to discount or it may even have been disregarded, in the very least, outweighing with precipient witness the expert testimony is an abuse of discretion. Couldn't the court have determined that the people who were there who actually observed Mr. Raines were in a better position to give evidence regarding his state of mind at the time, as opposed to someone who was looking back and determining what his capacity would have been without physically having examined him during that time? Your Honor, clearly, there's some of that, and that is relevant. However, the question is, how much did they witness? How much did these people witness? In our mediations, Your Honor, at the beginning of the mediation, you might briefly meet with the mediator and he goes over the ground rules. Then everybody is put into separate rooms. And then the mediator bounces back and forth. This is the bankruptcy dispute resolution program in the Eastern District. Only at the end of the proceedings, when the document is being signed, are does everybody get together? And sometimes they don't even get together then because they, you know, they don't like each other very much. But in this case, it's my understanding that that was the time when these precipient witnesses witnessed him, but not when there was negotiating back and forth between the parties, because the mediator goes back and forth. So there was not – but we weren't able to present that evidence because the court determined that the – that the evidentiary record was sufficient, apparently, and would not allow us to rebut. And that was one of the problems we had, was that these witnesses were only presented on reply, and the Court would not permit the evidentiary record to be reopened to allow an impeachment of those – of those witnesses. Kennedy. Why didn't the district – why didn't the Court allow you to do it? Your Honor, there's a new local rule that permitted the Court to have the absolute discretion to determine whether the evidentiary record should be reopened or not to permit. In other words, what you have is you have a – you have the opening, and then you have the opposition. There's a local rule that closes it, and if you don't get in before the local rule says, then you have to get permission, and it was turned down. Why – are you saying that there was a violation of due process rights or – Your Honor, we are saying there's a violation of due – under the circumstances, this is a very important matter. There should have been – Well, it is very important, but the question is whether counsel made the mistake and should have acted more promptly. And they have local rules to advise counsel when they have to do certain things. If they fail to follow those local rules, then we've held in quite a few cases that the district court does not abuse its discretion by going ahead and forcing the local rule. How does it get to due process? We haven't held that as a due process problem. Your Honor, the trustee could have brought these witnesses at the very beginning. Remember, this is a motion to enforce a settlement. The trustee was aware that Mr. Raines had had the operation and that his – his doctors had claimed that he had – that he was incapable at the time of participating. He knew that Mr. Raines objected to the settlement, because when he woke up from surgery at some point, he realized it was there. And the trustee really had an obligation to bring those – those witnesses in his case-in-chief. It was pure gamesmanship that he waited. You're saying the trustee has an obligation to bring your witnesses that are counter to his witnesses in the case-in-chief. Your Honor, the question – Do you have a case – do you have a case that says that? I've never heard that. Well, Your Honor, I did – I did – I did brief cases that say the burden of proof on a motion to enforce a settlement is on the trustee. That's correct. That's different from saying he's got to bring in your witnesses. He's not – they're not – they're his witnesses to prove that there was – that there was not – that there was mental capacity. That was what this was all about, Mr. Chairman. But you're saying he has to anticipate your witnesses and counter them in his opening – in his opening case. Is that – that's your argument? Your Honor, if the burden of proof is on the trustee to prove that there was capacity under the circumstances, then our position is, is that at a minimum, if he's going to bring the witnesses on reply, we ought to be able to – His burden is not to prove capacity. It's the burden of the person who's claiming incapacity to prove incapacity. His – his burden was to enforce the settlement agreement, to prove that the settlement agreement should be enforced. You challenged the settlement agreement on the basis that Mr. Raines was incompetent. That's not his burden to anticipate that and refute it in advance before he even sees what your evidence is. Your Honor, if – if we're trying to get to the truth of the matter, which is mental competency, it seems to me that the court should exercise its discretion in calling witnesses or allowing recipient witnesses to be impeached. And by not allowing that to happen, it created a biased record. Well, the problem is that may be ideal, but the issue is whether or not there is a due process violation if the court does not follow that format. And do you have a case that you can cite to us that says that the failure of the district court to require the trustee to anticipate your witnesses and refute them in advance is a violation of due process? No, Your Honor. We cited Mullane v. Hanover for the proposition that there's a right to be heard. And we – we submit that we were not – that was – it was – we were not permitted to be heard as to the – as to the weight should be given to those recipient witnesses. Let me ask you one final question. On the settlement agreement, it says, in the event that the $250,000 payment is not timely made by the defendants, judgment shall be entered denying the debtor's discharge and order shall be – shall be entered denying the debtor's exemption claim to the ABA pension plan up to the amount of $250,000. Now would you explain why that doesn't preclude your challenge to the award of that amount from the pension plan to the trust – to the estate? Because Your Honor, and I appreciate the arguments that have been made, it's because the property is not property of the estate. The court – bankruptcy court has no jurisdiction. No – no more than – than a creditor would have jurisdiction. Mr. Raines cannot waive the anti-alienation provisions of that provision. And that's really what it boils down to. Mr. Raines has agreed – you know, that's what we're saying. That's what the trustee is saying. Mr. Raines has agreed to waive the anti-alienation provisions of the ABA plan. So he agreed to an unenforceable provision in the settlement agreement. That's your argument. Your Honor, my argument is that he cannot agree to waive an anti – an ERISA anti-alienation provision. He doesn't have standing to do that. The only person that can do that would be the trustee. And I don't think they can do that, either. It's – it's a part of the plan. And if – and if Your Honor finds that, in fact, a beneficiary can waive the anti-alienation provisions, then it creates a host of internal revenue problems for people, because it means that there aren't real anti-alienation provisions. And that's the only way you can have an anti-alienation provision that – that conforms to the Internal Revenue Code, is if it's – if it's – it prevents creditors under any circumstances from getting to the rest of that plan. All right. Thank you. We'll give you one minute for rebuttal. Thank you. May it please the Court. I'm Gregory Hughes, the attorney for Ken Flynn, the bankruptcy trustee for Mr. Raines' Chapter 7 estate. You let your voice drop down as you complete a sentence. If you want to hear us, have us here, you've got to keep your voice up. Sure. I'll do my best. I think I'm allergic to San Francisco, so my voice is a little bit hoarse, but I'll do my best. We're here today because Mr. Raines reneged on a settlement agreement, an agreement that required him to pay $250,000 to my client. Mr. Raines is an attorney and a former California State Senator. When he filed bankruptcy, he disclosed that he had a retirement plan with approximately $700,000 and that he was the trustor of an offshore trust with assets in excess of $2 million. Litigation ensued, and it went to a settlement conference, and it was resolved. Mr. Raines agreed to pay $250,000 to the trustee. He then decided he didn't want to pay the $250,000, and the Bankruptcy Court initially enforced the settlement, summarily enforced it, and approved it, which is required for a settlement, and then ordered him to pay $250,000 from the retirement plan to the trustee. Contrary to what counsel said, it's not a question of executing on the plan. It's not a question that the trust the bankruptcy trustee is trying to go out and grab the plan. The judgment says, Mr. Raines, you have access to the funds in the plan. Go out and withdraw $250,000 and turn it over to the trustee. Can he do that without violating any provisions in the ERISA scheme? It would not violate the anti-alienation provision. And he's not assigning the ERISA plan over to the trustee. He's actually making a withdrawal from an existing account. Exactly. And he can do that without violating any provision of ERISA. Mr. Raines has full access to all of the money in his plan. He's over the age of 59 and a half, which means that he has full access. He can retire, pull out the money, do anything he likes with it. The anti-alienation provision, under your theory, counsel, is really irrelevant to all of this. Yes, exactly. Now, we've got two appeals here, one appeal from the settlement order and an appeal from the subsequent judgment. The appeal from the settlement order is very simple. Each side presented its evidence, and the bankruptcy court made a factual determination based on the evidence before it. Since there was evidence to support the bankruptcy court's decision, that decision cannot be clearly erroneous, and it must be affirmed. The appeal from the judgment is also very simple. It implemented the settlement agreement, implemented the order approving the settlement agreement, and gave the trustee what he had bargained for. But, counsel, on the second appeal, wasn't that dismissed on the basis that the notice of appeal was untimely? Yes. The district court ruled that the notice of appeal was untimely, because the initial appeal was determined to be a premature notice of appeal, which covered both the judgment and the prior order. There is a substantial jurisdictional problem here, because we have two appeals and only one final judgment. Well, but for bankruptcy purposes, the concept of finality is a little fluid, wouldn't you agree? I would agree that this Court has ruled that it's a little fluid. The difficulty I have with this case is that the bankruptcy court ruled the first order to be final, and then reversed itself and said it wasn't final. That was the district court? The district court, yes, said that the bankruptcy ruling was final, and then reversed itself and said it wasn't final. In the context of our rulings on when a bankruptcy decision is final, that causes me some concern. In the context of an adversary proceeding, the normal rules of finality should apply. An adversary proceeding is initiated by a complaint and it is concluded by a judgment. And the judgment is not final. But may or may not be concluded by a judgment. Well, ordinarily, if it's to be appealed, there would be some kind of a judgment or possibly a dismissal order. Or a practical determination that the bankruptcy court has made a decision that resolves the issue as to those parties. In the ordinary course of bankruptcy proceedings, you can have that. If there's a motion for relief from automatic stay, that can be held to be final. If a Chapter 11 plan is confirmed, that can be held to be final. On what basis, then, do you think the district court considered that to be a final determination? Because, and I'm speculating here, because we never saw the district court. We never saw the district court. We didn't have any hearings. But I believe that initially, the court focused on the fact that the bankruptcy judge had ordered the settlement agreement to be enforced and had approved it, and didn't realize that there was still a subsequent judgment that had to be entered. When you have a judgment of a settlement agreement, it's not a pro forma, though. If you've argued, I mean, the gist of the matter was decided in the motion to enforce the settlement agreement. Well, then, I'm not sure why it was necessary to have a judgment. I mean, you can make the same argument about any case. You know, a case that grants a motion for summary judgment, you have the order. But until there's a judgment on it, it's not going to be appealable. Well, that's not necessarily true, either. If the parties treat it as final and the court treats it as final, a minute order can be entered, and that can be appealed. But the question I have for you is, what case are you relying upon for the proposition that in an adverse proceeding in bankruptcy court, that there must be a judgment in order for there to be an appeal? I'm not – I'm not – that's not quite what I'm saying. I'm saying that the – the flexible rules for – for finality in bankruptcy proceedings apply in the context of bankruptcy proceedings, not adversary proceedings. But I don't have to – Okay. Now, what case are you relying upon for that nuanced characterization of this case? Your Honor, I don't have a specific case. I think in my brief, I cited the – I did refer to the flexible concept of finality in bankruptcy proceedings and distinguished the – the – those cases. Otherwise, we wind up with situations where, precisely like this, you have an order which really isn't final being appealed. And it gets – it gets confused, because interlocutory orders are appealable to the district court, but they cannot be heard by this Court, an appeal from a new court. And that's under the flexible finality doctrine that we've incorporated. Yes. I – I submit, though, that finality does still have some meaning in the bankruptcy context, and that this particular interlocutory – the particular order approving the settlement was not a final order. Well, if it was not final, then how did – do you counter opposing counsel's argument, then, that the judgment was obtained in an ex parte fashion? There's no – I don't counter it. It was obtained on an ex parte basis. The – the order approving the settlement granted the motion which requested approval of the settlement, enforcement of the settlement, and entry of a judgment. Those were the three things that were requested. And the judgment was then submitted, admittedly, on an ex parte basis. But you don't normally have a hearing to settle the terms of a judgment. And – And everything was – under your view of this, everything was final except for entry of judgment. Well, the judgment had to – it was more than just a ministerial act. It had to provide that the discharge would be denied and had to deny the claim of exemption. And it – it was – If it were more than ministerial, on what basis can it be done ex parte? If it – if it were substantive, how – what case authority are you relying upon to say it could be done ex parte? Ex parte means the order is submitted to the court – the judgment form is submitted to the court. That sounds ministerial. And the court decides whether to – to sign it, you know, how to – whether changes need to be made. There – there was – yes, there was no hearing on the terms of the judgment. But that – that does not mean that there was anything wrong with it. In fact, the – No, I'm not saying there's anything wrong with it. I'm saying – I mean, I – to me, you're trying to have it both ways. You're saying that the order wasn't final, but on the other hand, that nothing else needed to be done except for the court to sign the judgment. I guess that's how I – that's how I see it. If – if there's a – if there's a situation where a judgment has to be entered, you have to – in my view, you have to wait until that judgment is entered before you can appeal it. And then what is appealed is the judgment, not the – Well, what effect did the motion to alter or amend the judgment have on the timing of the notice of appeal in your view? Well, according to the district court, it was of no effect. In your view? In your view? At the time – at the time, I assumed that it validly extended the time period for filing the notice of appeal. Certainly, Mr. – Mr. Hollister thought that and the – But that was before the bank – the district court reversed itself. Is that true? Yes. And – and the members of this panel know far more about appellate jurisdiction than I do, and so I'm not sure that I can add a whole lot to either what the district court did or your – your understanding of appellate jurisdiction. Maybe you could clarify, why did the district court – on what basis did the district court decide that there's no tolling that occurs because the bankruptcy court lacks jurisdiction over the motion? I don't quite understand that. Because if there was – if the initial notice of appeal was premature, then it was a – it was deemed to be a notice of appeal from the judgment as soon as that was Well, we've had some cases say – and I don't understand. You understand bankruptcy law better than I do. Every time I get into it, I think this is a strange land. It is indeed. But we allow appeals to be taken and then we say, but the bankruptcy court can continue on and do other things. Why wasn't these one of those – one of those cases that, okay, they take this up, but the bankruptcy court had power to do other things? Because it wasn't really a bankruptcy matter. It was a – it was a rule of civil procedure-type matter. Judgment is entered, notice of appeal is filed, the lower court loses jurisdiction over the – over post-trial motions. Now, the judgment can be – Well, if it was premature, if it was premature, it was a nullity, and the – and the bankruptcy court has jurisdiction. Your position, I understand, is that the appeal didn't come up until the second effort. That's when there was a final judgment? I'm not sure. Well, the final judgment was the judgment entered by the bankruptcy court. That's correct. The second appeal. Right. Okay. Now, if the first appeal was a nullity because it was premature, then the bankruptcy court didn't lose jurisdiction. That's correct. So I don't understand why you said there's no tolling because the bankruptcy court lacks jurisdiction over the motion. The bankruptcy court, under the – under your view, the bankruptcy court never lost jurisdiction by the premature filing. I'm not sure that it's my view, because I'm not taking a position on, one way or another, on how the appellate jurisdiction issues should be resolved. I'm throwing up my hands. Well, now, counsel, you can't throw up your hands. You're retained by – to use your professional ability to come as an officer of the court to advise us what your best judgment is. Now, if you're saying there's no answer to this question and it's impossible for you to give – as an officer of the court to give your view, I can understand that. No, I'm not saying that. But that it's a difficult issue doesn't allow you to throw up your hands, because that's not your responsibility, as I understand it. All right. Okay. So what are you saying? I would go along with the district court, that the – because that tends to save the – it tends to give the court – this Court jurisdiction over at least something. The ruling of – the district court's view was that the – the final view was that the initial order was not final. There was a notice of appeal, and the notice of appeal, because it was premature, leaped forward and covered the judgment that was subsequently entered. And that – that is appropriate. That's in the rules of – I'm not sure which rule it is now. The rules of civil procedure, there's a similar rule in the rules of appellate procedure, and I mentioned those in my brief. But, counsel, where does that leave the motion to alter or amend the judgment? I think the best that can be said is that that is subsumed in the judgment, and that the court can take up the issues of both the judgment and the settlement order. What is the motion to alter or amend the judgment is subsumed in the judgment? Oh, I'm sorry. I'm sorry. I thought you meant the settlement order. I – I – No. No. I said, where does that leave the motion to alter or amend the judgment? It becomes meaningless. But that's not really being appealed anyway. Meaningless. Of no effect, because the district court was correct. The lower court lost jurisdiction over the matter once there was an appeal from the judgment. But if it's premature, then there is no appeal. No, there is an appeal. You have to search hard for it, but — But a worthless appeal that takes jurisdiction away from the bankruptcy court. That – that could be one way of working it. It just seems to me strange. If the appeal – if the first appeal was a nullity because it's premature, how could a nullity appeal take jurisdiction away from the bankruptcy court? It was not a nullity. It was not an – it – it – according to the district court, it was an appeal from the subsequently entered judgment. It covered the subsequent judgment. So the – Oh, okay. Well, what you're saying is that that appeal becomes the real appeal and includes what happens subsequently. So we don't have a time problem. That is like Anderson v. Allstate, where you file a premature appeal, but then time catches up with it, we say it's okay. Correct. And this is the same theory here. That was the district court's theory. And I think that's probably the – the best theory, because I think that preserves the maximum amount of the appeal. Okay. And then in that circumstance, we don't worry about the timing problem and the rest of that. We have both appeals before us at the same time. Except it really ought to be just one appeal. But we include what was in the second one. Right. I see your argument. I'm not real confident of it, though. All right. I think I wound up using it virtually all of my time. I want to point out one thing. Mr. Raines' plan is a single participant plan. There's no evidence in the record of that. You can't get it from the plan document that's there. So I'm a little hesitant to say it, but the court did ask whether it was a single participant plan. It is. Mr. Raines is the only one. The problem is that issue was never really litigated. And I don't want to litigate it. You're quite right. But I understood, counsel, that you told me that that was irrelevant. Right. But if you were to – I'm responding to Judge Wallace's question about whether there was a single participant. All right. And – Yeah, but – so unless it's irrelevant, though, we would have to send it back for fact-finding. But you indicate it's an irrelevant issue, so we don't need to worry about it. That's right. It was never litigated below, and it's not part of what needs to be resolved here, because we're going on the basis of a settlement, not on the basis of a litigated trial. The settlement resolved all of these issues. Counsel, the difficulty I have with this is you said that the judgment instructed Mr. Raines to go to the plan, take the money out, and give it to the estate. But that issue was never litigated either, whether or not Mr. Raines was obligated to go – that was not in the settlement agreement. The settlement agreement just said that the exemption would be negated. But the judgment said something different in your view. And my question is, if you vary from the terms of the settlement in the judgment, is it okay to do that ex parte, because Mr. Raines never got the opportunity to argue, no, I can't go down and get – I don't have to go down and get this money. That's not what the settlement agreement said. The settlement agreement said that he would lose his exemption as to $250,000 of the funds in the plan. Now – That's a different issue than going to the account and taking the money out. Wouldn't you agree that those are two different issues? No, Your Honor. Why not? Because only property of the estate can be exempted. There's two categories. It's exempt or it's property of the estate in this context. Owen v. Owen, a Supreme Court case I cited in my brief, says no property can be exempted and thereby immunized, however, unless it first falls within the bankruptcy estate. If it is property of the bankruptcy estate, then the debtor can be ordered to turn it over to the trustee. So your argument is that by agreeing that the exemption would be lost, Mr. Raines conceded that it was property of the estate. That's your argument? Yes. Yes. I understand. Any other questions? I've used up my time. All right. Thank you. I see we've brought you an interesting case. You definitely did. The question of whether the anti-alienation provision is relevant or not has never been briefed. It's never been argued. However Let me just ask a question. Does Mr. Raines have access to the funds that are in this account? Your Honor, I don't know and I don't think it matters. Let me explain to you why. First of all, Patterson v. Schumade says it's not property of the estate. And the Court specifically said that this decision reflects a considerate congressional policy choice, a decision to safeguard a stream of income for pensioners and their dependents who may be and perhaps usually are blameless, even if that decision, excuse me, turns out to be improvident. But they say that it's up to Congress to make the change to the anti-alienation provision. Paragraph 16.7 of the plan, which is Exhibit 24 of Mr. Raines' exhibits and page 69 of 76, specifically says that no right or interest of any participant or beneficiary in the plan or in his or her accounts or benefits of the plan shall be assignable or transferable in any manner. I understood Mr. Hughes to be saying something different. Now, you're talking about assigning it. And he's not saying that it has to be assigned at all. That all that has to happen is that Mr. Raines needs to withdraw $250,000 from this account or from another account in order to satisfy the mediation settlement that he's agreed to. And there's two things. One, the Court doesn't have jurisdiction over the asset in the first place to make any orders that affect it. And secondly, the plan itself says that none of the benefits under the plan are assignable or transferable or subject to any lien or liable for any obligation or liability. But it's not a lien if Mr. Raines, if Mr. Raines decides to take the money out to go buy a boat, he's not assigning the ERISA plan to the boat seller. But it also says that it's not liable for any obligation or liability of any person. But you know something? If Mr. Raines goes out and buys the boat and then finds he doesn't have enough money in his bank account and decides, well, I'm going to go take it out of my ERISA account, he can do that. And that, again, that doesn't mean that he's assigned the ERISA account to the boat seller. And Your Honor is assuming that there is a voluntary relinquishment here by Mr. Raines. And perhaps he can do that. I don't know. We haven't addressed that issue. But Mr. Raines is definitely putting his foot down saying you can't get to this account. This is ERISA qualified. This is not property of the estate. You can't have it. But he's already – haven't we already crossed that bridge when he agreed to – when he agreed in the mediation settlement? No, Your Honor, because there's a distinction. And I don't want to appear to be splitting hairs. But the fact is, is that property of the estate doesn't need to be exempted. There was a precautionary exemption and it was objected to, equally precautionary, by the trustee. But there's never been any litigation or any determination that this property is even subject to the Bankruptcy Court's jurisdiction. But what about opposing counsel's position that when Mr. Raines conceded that the estate because you can't have an exemption unless it's part of the estate in the first place, in the settlement agreement, notwithstanding what's put in the schedules, we're past that and to the settlement agreement. And, Your Honor, I'll just remind you that our position that it can't – anti-alienation provisions and protections cannot be waived by a beneficiary. There's no standing. There's no ability to do that. Well, but the issue is that Mr. Raines could have known that his plan did not – it was not excluded from the estate if he were the sole participant in it. And so when you're doing this – I mean, we presume that when people are engaging in settlement negotiations, they know their own respective circumstances. So it could be fair to infer that he realized that it was part of the estate, notwithstanding the fact that it had been excluded in the schedules. Your Honor, I don't think it's fair to infer that. I mean, he is a lawyer. He understands the anti-alienation provisions. He's been – he's been depositing money into this account religiously for the last 30 years. It's for his retirement. He needs his retirement. And – That's all the more reason to assume that he was aware of what the law required in order for it to be excluded from the estate. And not to be difficult, Your Honor, but I disagree that the agreement itself specifically says that they can get to this particular asset. Now, they have the rights of enforcement. And let me remind you also, we don't have a problem with the entry of the judgment. That's not a problem. And that's not prohibited by the doctrine of exclusive appellate jurisdiction or anything else. The only problem is, is that it goes beyond the agreement. It goes beyond what was requested at the – at the motion. It goes beyond the agreement. It goes beyond the minute order. So what do you – what did the agreement mean in your view when it said that the exemption will be – what was the purpose of putting that in there, that the exemption would be disallowed for the retirement plan? Your Honor, I do nothing but bankruptcy law. And I understand what a risk of qualified plan is in the terms of the jurisdiction. But what was – what was the reason for putting that specific language in there if it – if it were put in there? I'm assuming it was put in there for a reason. So what was the reason for that language to go into the settlement agreement? Your Honor, I presume, and I don't know I wasn't there, that it was because the trustee wanted it in. But I know as debtor's counsel, if I had been representing Mr. Raines at the time, I would have said, fine, give it to him. We don't care. They can object to your exemption all day long and they can prevail, but they still can't get to this – to this pension plan because of the anti-alienation provisions, which you can't waive. And – and we've already demonstrated in the – in the schedules that it's not property of the estate. It's not property of the estate. There's been no determination. They can't get at it. I'd be very comfortable. All right. Thank you.  Thank you to both counsel. Thank you. The case just argued is submitted for decision by the court. I'm going to take a five-minute break. All right.
judges: Wallace, Rawlinson, Bybee